## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **1.  PINNACLE PERFORMANCE &** | ) | |
| **REPAIR, INC., a domestic for profit business** | ) | |
| **corporation,** | ) | |
| | ) | **Case No. 19-cv-00183-JHP-JFJ** |
| **2. MICHAEL R. MAYOPOULOS,** | ) | |
| **an individual and shareholder of Pinnacle** | ) | |
| **Performance & Repair, Inc.,** | ) | *Jury Trial Demanded* |
| | ) | |
| **3.  KRISTI DYAN MAYOPOULOS,** | ) | *Attorney Lien Claimed* |
| **an individual and shareholder of Pinnacle** | ) | |
| **Performance & Repair, Inc.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **1.  THE CITY OF OWASSO,** | ) | |
| **an incorporated municipality and political** | ) | |
| **subdivision of the State of Oklahoma,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COME NOW** Pinnacle Performance & Repair, Inc., Michael R. Mayopoulos and Kristi Dyan Mayopoulos, Plaintiffs in the above-entitled action, by and through their attorneys, David R. Keesling and Timothy S. Kittle, of the law firm, DUNLAP BENNETT & LUDWIG, and for their causes of action allege as follows:

### JURISDICTION /VENUE /PARTIES

1.      Jurisdiction in this matter is based upon the existence of a federal question under 28 U.S.C.A. § 1331 (West 2019), as well as 28 U.S.C.A. § 1343 (West 2019), pursuant to claims arising under 42 U.S.C.A. § 1983 (West 2019), as well as 28 U.S.C.A. §§ 2201 and 2202 (West 2019) regarding the Court's authority to grant declaratory and injunctive relief.

2.      Venue is appropriate as all incidents alleged herein occurred within the Northern District of Oklahoma.

3.      Plaintiff Pinnacle Performance & Repair, Inc. ("Pinnacle"), at all times relevant to the claims alleged herein, was and is a domestic for profit business corporation operating in and under the laws of the State of Oklahoma.

4.      Plaintiff Pinnacle Performance & Repair, Inc. ("Pinnacle"), at all times relevant to the claims alleged herein, operated and operates its principal business at 109 West First Avenue in the City of Owasso, Tulsa County, Oklahoma.

5.      Plaintiff Michael R. Mayopoulos, at all times relevant to the claims alleged herein, was and is a citizen of the State of Oklahoma, and a resident of the City of Owasso, Rogers County, Oklahoma.

6.      Plaintiff Michael R. Mayopoulos, at all times relevant to the claims alleged herein, was and is one of two shareholders of Plaintiff Pinnacle Performance & Repair, Inc.

7.      Plaintiff Kristi Dyan Mayopoulos, at all times relevant to the claims alleged herein, was and is a citizen of the State of Oklahoma, and a resident of the City of Owasso, Rogers County, Oklahoma.

8.      Plaintiff Kristi Dyan Mayopoulos, at all times relevant to the claims alleged herein, was and is one of two shareholders of Plaintiff Pinnacle Performance & Repair, Inc

9.      Defendant City of Owasso ("City"), at all times relevant to the claims alleged herein, was and is an incorporated municipality governed by charter within the State of Oklahoma.

10.     Due to the foregoing, this Court has jurisdiction over the parties and subject matter.

### PLAINTIFFS' STATEMENT OF THE FACTS

11.     Plaintiffs incorporate paragraphs 1 through 10 herein as if fully set forth verbatim.

12.     On or about December 2010, Plaintiffs purchased the property at 109 West First Avenue in the City of Owasso for the express purpose of erecting and operating a "high performance" auto repair shop, *i.e.* Pinnacle Performance & Repair, Inc.

13.     On or about August 2011, Pinnacle Performance & Repair opened for business.

14.     On or about December 2012, Plaintiffs purchased a lot adjacent to the Pinnacle shop; the second lot now serves as parking for Pinnacle.

15.     On or about March 2015, Plaintiffs Michael Mayopoulos and Kristi Mayopoulos attended an Owasso City Council meeting to voice their concerns with and objections to a proposed "Overlay District" plan.

16.     On or about April 2015, Plaintiffs Michael Mayopoulos and Kristi Mayopoulos again attended an Owasso City Council meeting to voice their concerns with and objections to a proposed "Overlay District" plan.

17.     Plaintiffs' well-founded concerns centered on the stated purposes of the "Downtown Overlay District," which Plaintiffs colorably believed could be construed to truncate or eliminate an already lawfully operating business, specifically, Pinnacle Performance & Repair, despite the fact that Plaintiffs were already operating a well-established business that comported with applicable zoning ordinances.[1]

---

[1] *See generally* Owassso Ord. 860.5 and specifically §§ 5.2 (Purpose), 5.4 (Permitted Uses). It was due to the "Overlay District" that Plaintiffs were ultimately precluded from erecting a second structure on the lot referenced in Paragraph No. 14 above. The "Overlay District," as presented in this section of the Owasso Ordinances, articulates Defendant City's intent to change the character of the area in which Pinnacle has been lawfully operating for years, transforming it from an area zoned for commercial /industrial uses to a more "mixed use," less industrialized sector.

18.     On or about June 2017, Plaintiffs purchased a Dynamometer machine for their shop.

19.     A Dynamometer machine is a diagnostic tool used for measuring power, torque or force produced by an automobile.

20.     Accordingly, such machines are particularly useful and profitable in shops that cater to "high performance" automobiles, shops such as Pinnacle Performance & Repair.

21.     The acquisition and installation of such a machine requires a substantial financial investment by the shop intending to provide the services offered by the Dynamometer machine.

22.     Plaintiffs expended approximately $25,000.00 for the acquisition and installation of the Dynamometer at Pinnacle Performance & Repair.

23.     Plaintiffs made such a substantial investment in order to meet the needs of its existing customers and expand the customer base that can be served at Pinnacle Performance & Repair.

24.     On its own, a Dynamometer machine does not make a sound; rather, it is the necessary accelerating of the engine of the automobile that is being diagnosed that is responsible for the noise attendant to the repair or maintenance work being done.

25.     On or about July 2017, Plaintiffs began utilizing the Dynamometer as a part of the services offered at Pinnacle.

26.     On or about November 10, 2017, Plaintiff Michael R. Mayopoulos was cited to appear in the City of Owasso Municipal Court for allegedly violating Defendant City's noise ordinance.[2]

---

[2] According to the Owasso Police Department Incident Report (No. 2017-3037), Plaintiff Michael R. Mayopoulos was issued a citation based on the complaint of a citizen, not the personal observations of the arresting officer.  This would constitute a misdemeanor arrest and would be

27.    The charge was subsequently dismissed by then City of Owasso Prosecutor, Charles A. "Chuck" Ramsey.

28.    On or about February 28, 2018, Plaintiff Michael R. Mayopoulos was again cited to appear in the City of Owasso Municipal Court for allegedly violating Defendant City's noise ordinance.[3]

29.    Subsequent to this arrest, the charge was ultimately dismissed by City of Owasso Municipal Court Judge Michael Hilsabeck, pursuant to a demurrer entered by Plaintiff Michael R. Mayopoulos.

30.    On or about September 18, 2018, a letter from Infinity Investigations and Protective Services, by and through private retained counsel of Infinity Investigations and Protective Services, was sent to Plaintiffs, alleging that Plaintiffs were violating Owasso City Ordinances, Sections 8-310, 10-311 and 10-312, by the use of the Dynamometer machine.

31.    Further, said letter from Infinity asserted that Plaintiffs "conduct constitutes common law nuisance," and demanded that Plaintiffs take unspecified "steps to mitigate and /or otherwise control the sound of the dynamometer . . . [so] that it complies with city code and state law."

32.    On or about October 18, 2018, and again on or about February 5, 2019, the Owasso City Council addressed the matter at its regular council meetings.

---

unlawful under 22 OKLA. STAT. ANN. § 196, as it was effected without a warrant and based upon incidents or actions committed outside the presence of the arresting officer.

[3] Similar to the incident described in Paragraph 25 and fn. 2, the Owasso Police Department Incident Report of February 28, 2018 (No. 2018-0571) stated that Plaintiff Michael R. Mayopoulos was issued a citation based on the complaint of a citizen, not the personal observations of the arresting officer.  This would constitute a misdemeanor arrest and would be unlawful under 22 OKLA. STAT. ANN. § 196, as it was effected without a warrant and based upon incidents or actions committed outside the presence of the arresting officer.

33.     Plaintiffs have, at these settings, submitted their objections to any actions that would be taken to declare them in violation of City ordinances by operation of their business, particularly via use of the Dynamometer machine.

34.     On April 2, 2019, Plaintiffs, by and through retained counsel, publicly voiced their objections to the proposed Resolution, advising the Council and the public assembled therein of several of the allegations contained in this Complaint.

35.     Nonetheless, on or about April 2, 2019, the Owasso City Council voted to approve the passage of Resolution No. 2019-05, declaring Plaintiff Pinnacle Performance & Repair to be a nuisance.[4]

36.     Further, said resolution authorized the filling of an action in Tulsa County District Court seeking to abate the alleged nuisance.

37.     Said Resolution cited two specific Owasso City Ordinances which undergird its intent to declare Plaintiff Pinnacle Performance & Repair a nuisance subject to abatement:  Owasso Ord. 8-301 and 8-306.[5]

---

[4] At the time of this filing, Plaintiffs had not yet received an executed copy of said Resolution.  Plaintiffs were presented with a copy of the proposed Resolution subsequent to a meeting of the Owasso City Council on March 5, 2019.  The Council voted 3-2 to table the matter of the Resolution until April 2, 2019, pursuant to a request from undersigned counsel for Plaintiffs submitted to retained counsel for Defendant City, as undersigned counsel had just been retained by Plaintiffs to pursue their interests in the instant matter.

[5] Owasso Ord. 8-306 contains language that merely states Defendant City's authority to "define and summarily abate nuisances," pursuant to 50 OKLA. STAT. ANN. § 16 ("Cities and towns in this state shall have the right and power to determine what is and what shall constitute a nuisance within their respective corporate limits, and for the protection of the public health, the public parks and the public water supply, shall have such power outside of the corporate limits; and wherever it is practical so to do, said cities and towns shall have the power summarily to abate any such nuisance after notice to the owner, and an opportunity for him to be heard, if this can be given").  The language of this section is not at issue in this Complaint.

38.     The specific language Defendant City cites in its Resolution defining Plaintiffs' conduct constituting the alleged nuisance is found under Owasso Ord. 8-301(A)(1), which states: "A nuisance is unlawfully doing an act, or omitting to perform a duty, or is any thing or condition which either . . . Annoys, injures or endangers the comfort, repose, health or safety of others."

39.     The Resolution, as passed, constitutes a formal written policy of Defendant City of Owasso.

40.     Plaintiff Pinnacle lawfully operates in an area of Owasso zoned for such business operations, as evidenced by the following similar businesses located within blocks of Pinnacle:

      a.     Owasso Auto Care, 212 North Main Street (located within 3.5 blocks to the north of Pinnacle);

      b.     B & M Custom Exhaust, 116 West Broadway Street (located one half block north from Pinnacle, and a business which provides collateral services to Pinnacle);

      c.     Earnie's Automotive Repair, 109 West Second Street (located approximately one block to the south of Pinnacle);

      d.     Foster's Paint & Body Shop, 105 East Second Avenue (located approximately 1.5 blocks to the southeast of Pinnacle);

      e.     Bruski Autotechnik, 102 South Atlanta Street (located approximately one-half block to the southwest of Pinnacle);

      f.     Thomas Auto Repair & Detailing, 12 North Main Street (located approximately one-half block to the northeast of Pinnacle);

      g.     Transmissions and More, 106 West Third Street (located approximately two blocks to the south of Pinnacle).

41.     Moreover, during the time period at issue, another auto repair entity, JP Racing, LLC, 404 East Second Street (approximately 3 blocks to the northeast of Pinnacle), also operated a Dynamometer machine.[6]

42.     Plaintiffs do not operate the Dynamometer machine during hours which would be deemed unusual or inherently disturbing, such as overnights, and no such allegations have been leveled against Plaintiffs.

43.     Additionally, the use of the Dynamometer machine is intermittent rather than continuous; the most intensive diagnostics only last a few seconds.

44.     Moreover, due to the "Overlay District" created and imposed by Defendant City (referenced above in Paragraphs 15 and 16), Plaintiffs are precluded from erecting a structure on the second lot they had purchased (and now use as parking) that may have served to more adequately house the Dynamometer machine and minimize the effects of its intermittent noises associated with diagnosing automobiles.[7]

---

[6] Upon information and belief, JP Racing, LLC ceased operations due to a divorce matter pertaining to the individual who operated JP Racing.  JP Racing was open and operating at least from June 2017 to October 2018.

[7] Notwithstanding this fact, the genesis of the Resolution is comprised of the complaints of one area business, as articulated in Paragraph No. 45 herein.  The applicable ordinances do not provide an objective standard defining what constitutes a noise level that rises to the level of a nuisance.  Moreover, the complaints did not commence with the installation of the Dynamometer machine; Plaintiffs had previously been addressed regarding noises associated with the repair of a diesel engine.  Such sounds are inherently a part of maintaining and repairing automotive engines, and especially the "high performance" types of automobiles that Plaintiffs service in the normal course of their business. Even without the presence of the Dynamometer machine, loud noises created by "revving" engines have been and will continue to be an integral part of the business activities of Pinnacle Performance & Repair.

45.     Upon information and belief, the lone source of complaints upon whom Defendant City relied to formulate its Resolution is Bill Willson, who is affiliated with Infinity Investigation and Protective Services (located at 104 West Broadway Street).[8]

46.     Pinnacle Performance & Repair was in existence and providing services pertaining to "high performance" automobiles prior to Infinity Investigation and Protective Services occupying the 104 West Broadway Street location.

47.     Bill Willson is married to Teresa Willson, who is employed by Defendant City of Owasso as its Director of Information Technology.

48.     Thus, the lone complainant regarding the lawful operation of Plaintiff Pinnacle is one with a close familial relationship with one who is employed by Defendant City as a Department Manager.

49.     Accordingly, Defendant City has singled out Plaintiffs for this action due to the preferences or desires of the spouse of one of Defendant City's key governmental agents.

50.     Moreover, the applicable language of the Ordinance cited by the City as defining the conduct amounting to a nuisance is impermissibly vague in that it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

51.     Further, the applicable language of the Ordinance cited by the City as defining the conduct amounting to a nuisance is impermissibly vague in that it encourages arbitrary and

---

[8] *See e.g.*, Art Hadaway, "Longtime feud between two Owasso businesses culminates in hearing at City Council," https://www.tulsaworld.com/communities/owasso/news/longtime-feud-between-two-owasso-businesses-culminates-in-hearing-at/article_4989c7d4-23e6-58f3-910d-d112ce3b5771.html, Owasso Reporter, Feb. 6, 2019.  *See also* Art Haddaway, "Ongoing feud between Owassa, businesses about noise complaint prolonged in City Council," https://www.tulsaworld.com/communities/owasso/news/ongoing-feud-between-owasso-businesses-about-noise-complaint-prolonged-in/article_0d531d70-57e0-538c-ba60-df9a916db80e.html, Owasso Reporter, March 6, 2019 (last visited March 25, 2019).

discriminatory enforcement as it does not provide any specific standards as to what constitutes a level of noise (particularly in a district zoned for such businesses) that rises to the level of a nuisance.

52.     Additionally, the applicable language of the Ordinance cited by the City as defining the conduct amounting to a nuisance is impermissibly vague in that it encourages arbitrary and discriminatory enforcement by impermissibly delegating basic policy matters to police officers, judges and juries for resolution on an ad hoc and subjective basis.[9]

53.     Plaintiffs have not used their property in an unreasonable, unwarranted or (especially) an unlawful manner, inasmuch as Pinnacle Performance & Repair has been operated as a "high performance" auto repair business since 2011, and that pursuant to Defendant City of Owasso's zoning ordinances.

54.     Accordingly, the manner in which Plaintiffs operate a lawful "high performance" auto repair business does not substantially interfere with the ordinary comforts of human existence.

55.     Consequently, upon information and belief, Defendant City is utilizing the instant controversy to further its objectives of transforming the area designated as the "Overlay District" away from the commercial and industrial uses under which Plaintiff Pinnacle Performance & Repair has been lawfully operating since 2011 – prior to the adoption of the "Overlay District" – to a non-industrial, "mixed use" theme by the unconstitutional, inequitable and selective use and enforcement of its ordinances against Plaintiffs.

---

[9] This fact is illustrated by the treatment by Defendant City's Prosecutor and Municipal Court Judge of the citations issued to (and unlawful arrests of) Plaintiff Michael R. Mayopoulos pertaining to the alleged noise created by the lawful use of Plaintiffs' diagnostic tool.  In the first instance, the City Prosecutor at the time, Charles A. "Chuck" Ramsey refused to prosecute the charge (upon information and belief, Mr. Ramsey was subsequently relieved of his City Prosecutor duties).  In the second instance, the Municipal Court Judge granted Plaintiff's demurrer.

## CAUSE OF ACTION NUMBER ONE:
### VIOLATION OF DUE PROCESS AND EQUAL PROTECTION OF THE LAWS:
### CLASS OF ONE
### 42 U.S.C.A. § 1983

56.     Plaintiffs incorporate paragraphs 1 through 55 herein as if fully set forth verbatim.

57.     Plaintiffs collectively have owned and operated a lawful business at 109 West First Avenue in the City of Owasso since 2011.

58.     The business owned and operated by Plaintiffs, i.e., Pinnacle Performance & Repair, operates in an area that is specifically zoned for such businesses by Defendant City of Owasso.

59.     A substantial number of similar businesses have operated and continue to operate in the same zoned area as Pinnacle Performance & Repair, including an auto repair business that utilized a Dynamometer machine.

60.     Nonetheless, Plaintiffs have been singled out by Defendant City of Owasso for dissimilar and less favorable treatment than similarly situated businesses, specifically via Resolution No. 2019-05, which is a written policy by Defendant City.

61.     Additionally, Plaintiffs have been singled out by Defendant City of Owasso for dissimilar and less favorable treatment than similarly situated businesses, specifically via the unlawful arrests of Plaintiff Michael R. Mayopoulos.

62.     The less favorable and dissimilar treatment directed at Plaintiffs is motivated by Defendant City serving the purposes and ill will of one of its key agents.

63.     There is no rational basis for the less favorable and dissimilar treatment of Plaintiffs by Defendant City of Owasso.

64.     The less favorable and dissimilar treatment of Plaintiffs has adversely affected and will adversely affect their lawful business.

65.     The less favorable and dissimilar treatment of Plaintiffs has caused Plaintiffs to be unfairly subjected to an unequal and prejudicial application of the ordinances of Defendant City of Owasso.

66.     The less favorable and dissimilar treatment of Plaintiffs has caused Plaintiffs to be unfairly subjected to unwanted publicity and notoriety among the public in the relevant area in which Plaintiffs conduct a lawful auto repair business.

67.     Thus, Plaintiffs' rights to Due Process and Equal Protection of the laws under the Fourteenth Amendment to the United States Constitution have been, and are subject to continuously be, violated by Defendant City of Owasso pursuant to its written policy pronouncement.

68.     As a direct and proximate result of the actions by Defendant as described herein, Plaintiffs suffered injury.

69.     Consequently, Plaintiffs are entitled to damages and other relief as set forth herein.

### CAUSE OF ACTION NUMBER TWO:
### VIOLATION OF DUE PROCESS AND EQUAL PROTECTION OF THE LAWS:
### VOID FOR VAGUENESS (AS APPLIED)
### 42 U.S.C.A. § 1983

70.     Plaintiffs incorporate paragraphs 1 through 69 herein as if fully set forth verbatim.

71.     The language of the nuisance ordinance, as cited by Defendant City of Owasso in Resolution No. 2019-05, fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, i.e., it contains vague and ill-defined standards regarding what violates the ordinance.

72.     Further, as applied, the language of said ordinance authorizes or encourages arbitrary and discriminatory enforcement, *i.e.*, it impermissibly delegates basic policy matters to police officers, judges and juries for resolution on an ad hoc and subjective basis.

73.     Thus, it invites (and has invited) arbitrary and discriminatory application against Plaintiffs.

74.     Accordingly, Plaintiffs' rights to Due Process and Equal Protection of the laws under the Fourteenth Amendment to the United States Constitution have been, and are subject to continuously be, violated by Defendant City of Owasso due to its unlawful and arbitrary application of the ordinance against Plaintiffs.

75.     As a direct and proximate result of the actions by Defendant as described herein, Plaintiffs suffered injury.

76.     Consequently, Plaintiffs are entitled to damages and other relief as set forth herein.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs Pinnacle Performance & Repair, Inc., Michael R. Mayopoulos and Kristi Dyan Mayopoulos pray this Court will grant to them the following relief:

A.     Award Plaintiffs all actual damages, economic and non-economic, including those emanating from injury to reputation, loss of business, physical pain, mental anguish and emotional distress, in an amount exceeding seventy-five thousand dollars ($75,000.00);

B.     Declare that the ordinance underlying Defendant City of Owasso's Resolution No. 2019-05, specifically Owasso Ord. 8-301, is unconstitutionally vague and therefore void;

C.     Declare that the ordinance underlying Defendant City of Owasso's Resolution No. 2019-05, specifically Owasso Ord. 8-301, is unconstitutionally vague, as applied to Plaintiffs, and therefore void;

D.     Declare that the enforcement of the ordinance underlying Defendant City of Owasso's Resolution No. 2019-05, specifically Owasso Ord. 8-301, against Plaintiffs violates Plaintiffs' rights to Due Process of Law and Equal Protection of the Laws under the Fourteenth Amendment to the United States Constitution;

E.     Declare that Defendant City of Owasso violated the constitutional rights of Plaintiff Michael R. Mayopoulos by effecting unlawful arrests against him on or about November 10, 2017 and February 28, 2018;

F.     Declare that Resolution No. 2019-05 is a policy of Defendant City of Owasso and that said policy is unconstitutional;

G.     Enjoin Defendant City of Owasso from seeking to enforce the terms of Resolution No. 2019-05 against Plaintiffs;

H.     Award to Plaintiffs attorneys' fees and costs pursuant to 42 U.S.C.A. § 1988(b) and any other applicable provision of law;

I.     Award to Plaintiffs any other further relief this Court deems just and equitable.

Respectfully submitted,

**DUNLAP BENNETT & LUDWIG**

/s/ David R. Keesling
David R. Keesling, OBA No. 17881
Timothy S. Kittle, OBA No. 21979
6660 South Sheridan Road, Suite 250
Tulsa, Oklahoma 74133
(918) 998-9350 – Telephone
(918) 998-9360 – Facsimile
dkeesling@dbllawyers.com
tkittle@dbllawyers.com
*Attorneys for Plaintiffs:*
*Pinnacle Performance & Repair, Inc.*
*Michael R. Mayopoulos*
*Kristi Dyan Mayopoulos*