## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| PINNACLE PERFORMANCE & REPAIR, INC., a domestic for profit business corporation, | ) ) ) ) ) | |
| MICHAEL R. MAYOPOULOS, an individual and shareholder of Pinnacle Performance & Repair, Inc., | ) ) ) ) | Case No. 19-CV-183-TCK-JFJ |
| KRISTI DYAN MAYOPOULOS, an individual and shareholder of Pinnacle Performance & Repair, Inc., | ) ) ) ) | |
| Plaintiffs, v. | ) ) ) | |
| THE CITY OF OWASSO, an incorporated municipality and political subdivision of the State of Oklahoma, | ) ) ) ) | |
| Defendant. | | |

## OPINION AND ORDER

Before the Court is the Motion to Dismiss filed by defendant City of Owasso ("City") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Doc. 11. Specifically, the City asserts that *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny compel dismissal of the Complaint in this case.  *Id*.  Additionally, it contends that Plaintiffs Michael R. Mayopoulos and Kristi Dyan Mayopoulos ("Plaintiffs") lack standing to sue the City. Plaintiffs oppose the motion.  Doc.16.

### I. Background

This lawsuit arises from a dispute between Plaintiffs and the City over the use by Pinnacle Performance & Repair, Inc. ("Pinnacle") of equipment used to measure power, torque or force

produced by "high performance" automobiles.  On April 2, 2019, the Owasso City Council, over Plaintiffs' objection, approved a resolution declaring Pinnacle's use of the Dynamometer to be a nuisance, and authorizing the filing of an action in Tulsa County District Court seeking to abate the alleged nuisance.  The next day, Plaintiffs filed the pending case pursuant to 42 U.S.C. §1983, alleging the City had violated their rights of due process and equal protection and that the nuisance ordinance the City cited in its resolution is void for vagueness.

On July 16, 2019, the City filed its Petition for Order of Abatement in Tulsa County District Court, Case No. CV-2019-884, as authorized by the Owasso City Council's resolution.

On July 31, 2019, the City filed the pending Rule 12(b)(6) motion, arguing that the case should be dismissed based on *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, and that neither of the individual plaintiffs have standing to sue the City.  Doc. 11.

On September 10, 2019, Tulsa County District Judge Jefferson D. Sellers stayed proceedings in the state court case pending resolution of the pending Motion to Dismiss in this case.

**II. Rule 12(b)(6) Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*  "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

### III. Relevant Allegations of the Complaint

Plaintiffs Michael and Kristi Mayopoulos are shareholders of Pinnacle.  Doc. 2, ¶¶5-6. Since August 2010, Plaintiffs have lawfully operated the high performance auto repair shop located at 109 West First Avenue in Owasso—an area of Owasso zoned for such business operations. *Id.*, ¶¶12-13, 40.

In March and April of 2015, Plaintiffs attended Owasso City Council meetings to voice concerns with and objections to a proposed "Downtown Overlay District" plan, which articulated Owasso's intent to change the character of the area in which Pinnacle has been operating for years from an area zoned for commercial/industrial uses to a more "mixed use," less industrialized sector. *Id.*, ¶¶15-17, n. 1.

In July 2017, Pinnacle began using a dynamometer machine, which is a diagnostic tool used for measuring power, torque, or force of "high performance" engines. *Id.*, ¶25.  To measure

the full power, torque or force of an engine using the dynamometer, the engine must be accelerated to maximum capacity.  This process creates noise.  *Id.*, ¶24.

In November 2017, Michael Mayopoulos was issued a citation for alleged violation of an Owasso ordinance.  *Id.*, ¶26. The citation was later dismissed before a hearing was held. *Id.*, ¶27. In February 2018, he was issued a citation alleging a violation of a separate Owasso ordinance. *Id.*, ¶28. The citation was later dismissed by an Owasso municipal judge. *Id.*, ¶29.

On or about September 18, 2018, a letter from Infinity Investigations and Protective Services was sent to Plaintiffs, alleging Plaintiffs' use of the Dynamometer machine violated Owasso City Ordinances, §§8-310, 10-311 and 10-312. *Id.*, ¶30.

On or about October 18, 2018, and again on or about February 5, 2019, the Owasso City Council addressed the matter at its regular council meetings.  *Id.*, ¶32.  During these meetings, Plaintiffs submitted objections to any actions that would be taken to declare them in violation of City ordinances by operation of their business, particularly based on use of the Dynamometer machine. *Id.*, ¶33.  On April 2, 2019, Plaintiffs—by and through retained counsel—publicly voiced their objections to the proposed Resolution. *Id.*, ¶34.

The same day, Owasso—acting by and through its city council—voted to approve the passage of Resolution No. 2019-05, declaring Pinnacle to be a nuisance. *Id.*, ¶35.  The Resolution authorized the filing of an action in Tulsa County District Court to seek to abate the alleged nuisance.  *Id.*, ¶36.  The Resolution cited two Owasso City Ordinances supporting its intent to declare Pinnacle to be a nuisance subject to abatement:  Owasso Ord. 8-301 and 8-306.  *Id.*, ¶37.

The Resolution, as passed, constitutes a formal written policy of the City.  *Id.*, ¶39.

Upon information and belief, the lone source of complaints upon which the City relied in formulating its resolution is Bill Willson, who is affiliated with Infinity Investigation and

Protective Services. *Id.*, ¶45. Pinnacle was in existence providing services for "high performance" automobiles before Infinity began occupying the 104 W. Broadway Street location. *Id.*, ¶46. Bill Willson is married to Teresa Willson, who is employed by the City as its Director of Information Technology. *Id.*, ¶48. Accordingly, the City has singled out Plaintiffs for this action due to preferences or desires of the spouse of one of the City's key governmental agents. ¶49.

Moreover, the applicable language of the ordinance cited by the City as defining the conduct amounting to a nuisance is impermissibly vague in that it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited and encourages arbitrary and discriminatory enforcement as it doesn't provide any specific standards as to what constitutes a level of noise that rises to a level of nuisance. *Id.*, ¶52.

The Complaint also alleges that the City is using the instant controversy to further its objectives of transforming the area designated as the "Overlay District" away from the commercial and industrial uses under which Pinnacle has been lawfully operating since 2011—prior to the adoption of the "Overlay District"—to a non-industrial, "mixed use" theme by the unconstitutional, inequitable and selective use and enforcement of its ordinances against Plaintiffs. *Id.*, ¶55.

Pursuant to 42 U.S.C. §1983, Plaintiffs assert claims for violation of their rights of due process and equal protection (class of one) and for a declaratory judgment that the nuisance ordinance is void for vagueness. They seek damages in excess of $75,000, injunctive relief and attorney fees. *Id.* at pp. 12-13.

## IV. Analysis

The City, in its Rule 12(b)(6) motion, argues the *Younger* doctrine compels dismissal, and that neither individual plaintiff has standing to sue the City.

### A.  Oklahoma and Owasso Nuisance Laws

Under Oklahoma law, cities and towns have the right and power delegated to them by the Oklahoma legislature to determine what shall constitute a nuisance within their respective corporate limits, and, wherever it is practical to do so, they have the power to summarily abate any such nuisance after notice to the owner and an opportunity for him to be heard, if this can be given. 50 O.S. §16.  Oklahoma law defines a nuisance, in relevant part, as follows:

> A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omitting to perform a duty, which act or omission . . . [a]nnoys, injures or endangers the comfort, repose, health, or safety of others[.]

50 O.S. §1.  A "nuisance" can be "public" or "private."  50 O.S. §§2-3.  A "public nuisance" is defined as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damages inflicted upon the individuals may be unequal."  50 O.S. §2.  A "private nuisance" is defined as "every nuisance not included in the definition of [50 O.S. §2]."  50 O.S. §3.

The City's statutory definitions of nuisance, public nuisance and private nuisance are identical to the State of Oklahoma's statutory definitions of the terms.  Doc. 11, Ex. 1, Owasso City Council Ordinances, Ch.3, §8-301.  In particular, under the City ordinance, a "nuisance" includes "any thing or condition" which "[a]nnoys, injures or endangers the comfort, repose, health or safety of others." *Id.*  A "public nuisance is one which affects at the same time an entire community or neighborhood or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." *Id.*

### B.  The *Younger* Doctrine

In *Younger v. Harris*, 401 U.S. 37, 43 (1971), the Supreme Court observed that "[s]ince the beginning of this country's history Congress has, subject to few exceptions, manifested a desire

6

to permit state courts to try state cases free from interference by federal courts."  In *Younger*, a state criminal defendant filed a federal action alleging that the statute underlying his state prosecution violated the Constitution and asking the federal court to enjoin enforcement of the state statute.  401 U.S. at 38-39.  The Supreme Court acknowledged that "when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state offices from instituting criminal actions."  *Id.* at 45.  However, it stated that "this may not be done, except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate."  *Id.*

Although *Younger* involved a criminal prosecution, the doctrine has since been expanded to apply to cases involving civil enforcement proceedings in state court (*See Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975)); to cases involving the integrity of administration of the state's judicial system (*See Juidice v. Vail*, 430 U.S. 327 (1977)); to cases involving two private parties (*See Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)); and to certain administrative proceedings (*See Ohio Civil Rights Comm'n*, 477 U.S. 619 (1986)).

The Tenth Circuit, in applying *Younger*, has held that federal courts must abstain from exercising jurisdiction when the following three conditions have been met:

> First, there must be ongoing state criminal, civil, or administrative proceedings. Second, the state court must offer an adequate forum to hear the federal plaintiffs' claims from the federal lawsuit.  Third, the state proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Taylor v. Jacquez*, 126 F.3d 1294, 1297 (10th Cir. 1997) (citing *Seneca-Cayuga Tribe of Oklahoma v. State of Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989)).

In this case, the language Plaintiffs seek to have declared unconstitutional is taken directly from Oklahoma's statutory definitions of nuisance, public nuisance and private nuisance.

Moreover, the enforcement of Ordinance 8-301—which Plaintiffs' Complaint asks this Court to declare unconstitutional—implicates the procedural process set forth by Oklahoma law, which provides:

> In cases where it is deemed impractical summarily to abate any such nuisance **such city or town may bring suit in the district court of the county in which such nuisance is located, and it is hereby made the duty of the governing body of any such city or town, by the adoption of a resolution to direct the bringing of suit in the proper court for the purposes of abating any such nuisance. The district court of the county in which any such nuisance exists or is maintained shall have jurisdiction of any such case and power to adjudge and determine any action brought under the provisions hereof,** and where it is adjudged that any such nuisance exists or is maintained and should be abated, such court shall have the power and authority either by and through a commissioner appointed by such court, or otherwise, to cause such nuisance to be abated and to assess all the costs thereof, including the costs of suit, against the property on which such nuisance existed or is maintained, and to declare such costs a judgment against said property and order and direct the sale of said property for the purpose of satisfying said judgment and shall cause the same to be sold and proceeds thereof applied to the payment of the costs of abating any such nuisance.

50 O.S. §17 (emphasis added).

Plaintiffs do not dispute the first two considerations warranting *Younger* abstention—*i.e.*, that the state court provides an adequate forum to hear the claims raised in their federal court complaint, and that the state proceeding involves important state interests—are satisfied. Their sole argument is that because they filed this case before the City filed the state court case, the requirement for an "ongoing state proceeding" has not been met.

However, the Supreme Court has held that where a state proceeding is instituted against the federal plaintiffs after the federal complaint is filed "but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). In *Hicks*, as in this case, no state proceedings were pending against the defendants at the time they filed suit in federal court, but state court proceedings were subsequently filed against the federal court plaintiffs.

8

The Tenth Circuit, citing *Hicks*, has stated:

Generally speaking, federal courts invoke the *Younger* doctrine when a state prosecution is pending at the time the federal proceeding is initiated. However, the doctrine also may apply even when the state prosecution begins after the federal complaint has been filed.

*Kingston v. Utah County*, 161 F.3d 17 at *3 (10th Cir. 1998) (unpublished).

Pursuant to the *Younger* doctrine, federal courts may not "interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). Accordingly, "[a]lthough federal courts have a virtually unflagging obligation to exercise jurisdiction granted them, they must on rare occasions abstain from exercising their jurisdiction in order to avoid undue interference with states' conduct of their own affairs." *J.B. ex rel Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (internal citations omitted). *See also Jones v. Whittington*, 2013 WL 4501342 at *2 (CIV-11-0861-HE) Aug. 21, 2013 ("While *Younger* originally attached controlling significance to the timing of the respective case filings, the Supreme Court has since retreated from that position. . . .It now appears to view a later-filed state proceeding as 'pending' for purposes of the doctrine if it was filed before 'any proceedings of substance on the merits' had taken place in the federal court.") (citing *Hicks v. Miranda*, 422 U.S. 349) (additional citations omitted).

As previously noted, it is undisputed that Plaintiffs' constitutional claims and defenses could be raised in the state court case. Moreover, no proceedings of substance on the merits of this case have taken place. Accordingly, the Court concludes that dismissal of this case is appropriate. Having so concluded, the Court does not address the City's contention that plaintiffs Michael Mayopoulos and Kristi Mayopoulos lack standing to sue The City of Owasso.

**V. Conclusion**

For the reasons set forth above, the City of Owasso's Motion to Dismiss (Doc. 11) is hereby granted.

ENTERED this 17th day of April, 2020.

TERENCE C. KERN
United States District Judge